*T. B. Adams* and *F. Berry,* for appellant.
*G. Holland* and *C. C. Binkley,* for appellee.

———————◇———————

## THE STATE *v.* WALKER.

ONCE IN JEOPARDY.—DISCHARGE OF JURY.—When the accused is put upon trial on a valid indictment, before a legal jury, and the jury is discharged by the court without good cause, and without the consent of the defendant, he has incurred the first peril, and the discharge of the jury is equivalent to a verdict of not guilty. Page 352.

SAME.—That the jury, after ample time spent in consultation, is unable to agree upon a verdict constitutes good cause for their discharge. Page 352.

SAME.—The jury should not be discharged until ample time has been given for deliberation, nor until the court is satisfied that an agreement is impossible. Page 353.

The State *v.* Walker.

SAME.—A jury in a criminal case was out nineteen hours, and then reported to the court that there was no possibility of agreeing upon a verdict.

*Held,* that the court was justified in discharging them. Page 354.

APPEAL from the *Henry* Common Pleas.

ELLIOTT, J.—The defendant *Walker,* being in custody, was put upon trial in the Court of Common Pleas, on an information charging him with the commission of a rape, on a plea of not guilty. The jury having failed to agree upon a verdict, was discharged by the court, and the defendant was remanded for a further trial. He then filed a plea in bar of the further prosecution of the case, in which he alleged, in substance, that "he had been charged with this same offense before a justice of the peace" of said county of *Henry,* and had been committed to jail for want of bail, after the regular term of the Circuit Court of said county; that at the regular term of the Court of Common Pleas of said county an information was filed in said Court of Common Pleas, in due form of law; that he was thereupon arraigned on said charge and put upon his trial before the court and a jury duly impanneled and sworn; that the evidence was all given and the case submitted to the jury, who retired to their room to consult of their verdict, under the charge of a sworn officer; that the jury, after deliberating nineteen hours, returned and reported to the court that they had not agreed upon a verdict, and that there was no possibility that they could or would so agree. Whereupon the court, over the objections of the defendant and the prosecuting attorney, discharged the jury from the further consideration of the case, wherefore he claimed that he had been once put in jeopardy for said offense, and was therefore entitled to a discharge from further prosecution.

A demurrer was filed to the plea, because it did not state facts sufficient to bar the further prosecution of the information. The court overruled the demurrer, and, the district attorney declining a further reply, discharged the defendant. The State appeals.

The question presented in the case is, did the discharge of the jury, under the circumstances presented by the plea, operate as an acquittal of the defendant? The question is one of importance, and, under various conflicting decisions of the highest judicial tribunals of this country, is not of very easy solution.

The constitution of this State provides that "no person shall be put in jeopardy twice for the same offense." Such was also a settled maxim of the common law, at least in capital offenses, and it has been applied by most, if not all, of the States of the Union, to all criminal prosecutions. The question here presented involves a determination of what constitutes once putting in "jeopardy," within the meaning of the constitution, so as to shield the accused from a subsequent trial for the same offense.

The question is not a new one in this court. In *Weinzorpflin* v. *The State*, 7 Blackf. 186, the defendant below was indicted for a rape. The indictment contained three counts; the defendant was tried, and the jury returned a verdict of guilty on the first, without making any finding on the second and third counts, as to which the prosecuting attorney entered a *nolle prosequi*, after the rendition of judgment. The court below overruled a motion in arrest. It was held that the defendant, by the trial, had been put once in jeopardy on the two last counts of the indictment, and that, as to them, the proceedings were equivalent to an express verdict of not guilty. The opinion in the case was pronounced by Dewey, J., and contains a somewhat elaborate and careful discussion of the questions involved in the case. The construction given in that case to the constitutional provision referred to is stated thus : " The principle is that a man who has stood upon his defense on a valid indictment, before a legal jury, which has been discharged without good cause, has incurred the first peril, and shall not incur the second by a subsequent trial."

The question as to what would constitute a good cause, justifying the discharge of the jury, was not involved in

that case, but in the discussion of the questions before the court an opinion was incidentally expressed, in effect, upon the point presented in the case at bar. The cases of *The People* v. *Barrett et al.*, 2 Caine's R. 304, and *The People* v. *Goodwin*, 18 Johns. 187, and the conflict between them and the *Pennsylvania* and *North Carolina* decisions, on the same subject, were referred to and commented upon.

In *The People* v. *Barrett et al.*, *supra*, the prosecuting attorney, finding his evidence would not support the indictment, moved the court for leave to withdraw a juror, which the court granted. The defendants were afterwards tried and found guilty. The court arrested the judgment on the ground that the insufficiency of the State's evidence to convict was not a good cause for withdrawing a juror, and that the discharge of the jury was equivalent to an acquittal.

In *The People* v. *Goodwin*, *supra*, it was held that discharging the jury because there was no prospect of their agreeing during the term of the court, did not exonerate the defendant from a trial by another jury. The jury was out over twenty hours, and returned into court only half an hour before the time limited for the term expired, and reported that there was not the least possibility of their agreeing. The decision of the case seems to have been put upon the ground that the test by which to decide whether a person has been once tried would be, by a plea of *autrefois acquit*, or *autrefois convict*, which requires a verdict; and yet it is said in the opinion in that case, "that although the power of discharging a jury is a delicate and highly important trust, yet it does exist in cases of absolute and extreme necessity, and it may be exercised without operating as an acquittal of the defendant. It exists and may be exercised in cases where the jury, from the length of time they have been considering a cause, and their inability to agree, may be fairly presumed as never likely to agree, unless compelled so to do from the pressing calls of famine or bodily exhaustion." The court, after holding that the facts of that case showed

such a necessity, referred to the case of *The People* v. *Barrett et al.*, *supra*, with entire approbation. In commenting on these cases Judge DEWEY said: "The Supreme Court of *Pennsylvania* held that the inability of the jury to agree did not present such a case of necessity as would authorize the court to discharge them, and that discharging them for that reason exempted the defendant from liability to a subsequent trial. *The Commonwealth* v. *Cook*, 6 Serg. & R. 577. The same court also held that when the jury has been unnecessarily discharged, that matter may be pleaded in bar of another trial. *Commonwealth* v. *Clue*, 3 Rawle's R. 501. It is as to the effect of an unnecessary discharge of the jury that we quote the last cases, and not as to what constitutes a good cause for discharging them. So also in *North Carolina*, the discharge of the jury without necessity acquits the prisoner, and on the ground that he has once been put in jeopardy. *The State* v. *Garrigues*, 1 Hayw. 241; *In Re.* Spier, 1 Dev. 491."

And again, referring to the *New York* cases, it is said: "Some other rule of interpretation and test must be sought to justify these two decisions, both of which are held by the courts of *New York*, and by us, to be correct. The principle of construction adopted by the courts of *Pennsylvania* and *North Carolina*, and also by the Circuit Court of the *United States*, in *Shoemaker's* Case, 2 McLean, 114, will solve the difficulty. That principle, as before observed, is that a man who has stood upon his defense on a valid indictment, before a legal jury, which has been discharged without good cause, has incurred the first peril, and shall not incur the second by a subsequent trial."

In *Wright* v. *The State*, 5 Ind., 290, the defendant was put upon trial, but the court finding that it would be impossible to conclude the trial within the time limited for that term of the court, over the defendant's objection, discharged the jury and continued the cause until the next term. It was held, under a provision of the revision of

1843, which was held to be in force, that the court could continue the term until the case on trial was disposed of, and therefore that the jury was discharged without proper cause, and that the discharge was equivalent to a verdict of acquittal. The defendant having been once put in jeopardy, could not be again tried for the same offense. The rule stated by the court in *Weinzorpflin* v. *The State,* is repeated and approved.

In *Miller* v. *The State,* 8 Ind., 326, the accused was arraigned, put upon trial and his cause given to the jury. After the jury had been out twelve hours they returned into court and stated that they could not agree. The court, without having the prisoner brought from the jail, and without consulting him, of its own motion, discharged the jury; to which the defendant's counsel excepted, and then moved for the discharge of the defendant, on the ground that the discharge of the jury operated as an acquittal; but the court overruled the motion, and ordered that the defendant remain in custody for trial at a subsequent term. From these rulings the defendant appealed. It was held that the appeal would not lie, as the cause had not been brought to final judgment. But the court, as the opinion states, having no doubt upon the point involved, and for the purpose of saving future trouble and perhaps hardship in the cause, proceeded to decide the question. It was then held that the discharge of the jury by the court would operate as an acquittal of the accused, unless the discharge resulted from a necessity determined by law, in which the court had no discretion, and that the failure of the jury to agree, after a consultation of twelve hours, did not constitute such a necessity. Indeed the opinion seems to hold that a discharge of the jury for that cause, without the consent of the accused, at any time before the expiration of the term, however long the consultation, would operate as an acquittal, the court having no discretionary power in the case. The same position, in effect, was subsequently main-

tained in *Morgan* v. *The State*, 13 Ind. 215, and *Joy* v. *The State*, 14 Ind, 139. But the question of the right of the court to discharge the jury on account of their inability to agree upon a verdict, and to hold the prisoner for a further trial, was not involved in either of them.

It will be observed that *Miller* v. *The State* is the only case among those referred to, decided by this court, in which the power of the court to discharge the jury, because of their inability to agree upon a verdict, and to subject the party to further trial, was involved. We fully concur in the opinion expressed in all those cases, that where the accused is put upon trial on a valid indictment, before a legal jury, and the jury is discharged by the court without good cause, and without the consent of the defendant, he has incurred the first peril, and the discharge of the jury under such circumstances is equivalent to a verdict of not guilty, and bars another trial for the same offense. But after a careful examination of the question, we are clearly of opinion that the discharge of the jury because of their inability to agree, after ample time spent in consultation, and after it is apparent to the court that they cannot agree upon a verdict, constitutes a good cause for their discharge, and leaves the accused subject to be tried by another jury. In this conclusion we are sustained by the courts of *New York*, *Massachusetts* and *Mississippi*, as well as the federal courts, and, as we think, by good policy and sound reason.

It is conceded that if the jury, failing to agree, were kept together until the close of the term, their discharge without a verdict would become an uncontrollable necessity, and would not operate as an acquittal. And if after long effort and consultation it becomes clearly settled that the jury will not and cannot agree upon a verdict, and they are for that reason discharged before the close of the term, what difference can it make to the accused? When it is once settled that they cannot agree, the result to him is the same, whether they are discharged before or at the close of the

term. The necessity of their discharge without a verdict is alike manifest in either event.

The case of *The United States* v. *Perez*, 9 Wheat. 579, is in point. The prisoner was put upon trial for a capital offense, and the jury, being unable to agree, were discharged by the court, without the consent of the prisoner or of the attorney of the *United States.* The prisoner's counsel thereupon claimed his discharge. The court, in deciding against the motion for the prisoner's discharge, and that the discharge of the jury constituted no legal bar to a future trial, said: "We think that in all cases of this nature, the law has invested courts of justice with authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper to interfere. To be sure the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes, and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner."

The discretionary power in the courts referred to, is not that absolute discretion depending upon the mere will of the judge, but is a sound judicial discretion, to be exercised only upon sufficient reasons, and subject to the supervision of an appellate court.

A jury should not be discharged for failing to agree upon a verdict, until ample time and every reasonable opportunity has been given them for deliberation, nor then, until the court is clearly satisfied that they will not be able to agree upon a verdict. They should not be discharged while there is any probability of an agreement. See, also, *The United States* v. *Gibert*, 2 Sumner 19; *The United States* v. *Coolidge*, 2 Gallison 364; *The Commonwealth* v. *Bowden*, 9 Mass. 194; *Moore* v. *The State*, 1 Walker, (Miss.,) 134; *The*

*Commonwealth* v. *Olds*, 5 Little, (Ky.,) 137; *The United States* v. *Shoemaker*, 2 McLean, 114.

In the case at bar, as has been seen, the jury were out nineteen hours, and then reported to the court that it was impossible for them to agree, and for that reason asked to be discharged. The length of time they were engaged in consultation was sufficient to enable them to determine the possibility of agreeing, and the court, we must presume, was entirely satisfied that to hold them longer would not result in a verdict, and therefore discharged them. We think the circumstances justified the action of the court, and that the defendant was not thereby exempt from a subsequent trial. The plea was therefore bad, and the court erred in overruling the demurrer.

The judgment is reversed, and the cause remanded for further proceedings.

*Martindale* and *Peck*, for the State.

*Brown* and *Polk*, for appellee.