# CORNISH *v.* STATE OF MARYLAND

[No. 275, September Term, 1973.]

*Decided July 29, 1974.*

*Motion for rehearing filed August 9, 1974; denied September 9, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Gerald N. Klauber*, with whom were *Fine & Klauber, P. A.* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The single issue before us is whether, under the particular circumstances of this criminal case, the retrial of the defendant-appellant following the trial judge's *sua sponte* declaration of a mistrial would violate the double jeopardy prohibition of the Fifth Amendment to the United States Constitution.

On August 18, 1972, the appellant Trent William Cornish was indicted by the Grand Jury of Baltimore City for the murder of one John Gerald Bullock. The indictment also charged Cornish with assault with intent to murder Bullock and with assault upon Bullock. The trial was originally scheduled for January 11, 1973, but was postponed because of the State's lack of witnesses. Another trial date was scheduled for April 18, 1973, but it was also postponed for the same reason. On this later trial day, the prosecuting attorney informed Cornish's attorney that the prosecution possessed a statement which the defendant had given to the police. On April 27, 1973, the defense counsel filed a motion to obtain a copy of the statement. The State, however, did not respond to that motion.

On June 4, 1973, the trial commenced before Judge Shirley B. Jones in the Criminal Court of Baltimore. Cornish, after being advised of his rights, pleaded not guilty and requested a jury trial. Before the jury was selected, the defendant's attorney informed the court that his discovery motion of April 27, 1973, was still unanswered and that a motion to

suppress would be made during the course of the trial if the State attempted to introduce the defendant's statement. The trial was then recessed. When it resumed later in the day, the defendant withdrew his prior request for a jury trial and elected instead to be tried by the court. The State then presented its first witness, Police Officer Decewicz. The police officer testified as to the details of the crime and certain clothing and other objects found near the body of the victim.

Upon completion of Officer Decewicz's testimony, the prosecuting attorney remarked: "Now, Your Honor, inasmuch as it was anticipated that this was a guilty plea or a not guilty plea [on a] statement of facts, that is the only witness the State has available." The Assistant State's Attorney prosecuting the case had evidently been under the impression there was going to be a guilty plea or that, in the alternative, the defense had agreed to allow the State to present the remainder of its case on an agreed statement of facts. The defendant's attorney's recollection of the understanding was somewhat different, namely that the case would be tried on an agreed statement of facts "if we could agree on a statement of facts." The trial judge suggested a continuance. However, defense counsel, stating his desire to "dispose of this matter right now," agreed to stipulate as to the testimony of other police officers but objected to any attempt by the State to introduce the statement made by the defendant into evidence because the discovery motion had gone unanswered.

After a lengthy discussion among the prosecuting attorney, the defense attorney and the court on the matter of a continuance, on the failure of the State to answer the discovery motion, and on the admissibility of the defendant's statement, the trial judge sustained the objection of defendant as to the admissibility of the statement. The State again requested a continuance, and the trial judge initially indicated a willingness to continue the case while stating that "better judgment, frankly, would dictate the granting of a mistrial." The defendant's attorney objected to the continuance and moved for a dismissal of the

charges on the grounds that Cornish had been denied his right to a speedy trial and that "he is now in jeopardy." The trial judge then denied the defendant's motion for a dismissal, denied the State's motion for a continuance, and declared a mistrial.

Thereafter, the trial judge delivered in open court an oral opinion stating the reasons for declaring a mistrial. One of the principal reasons for the judge's declaration of a mistrial was set forth as follows:

> "Secondly, is the fact that it was stated very clearly, perhaps too clearly, that it was anticipated that a guilty plea was going to be entered. Now that was stated to the trier of the facts who had to judge the case and give a verdict on the issue of guilt or innocence, and I know that trial judges, experienced trial judges, are supposed to be able to, and I hope we can, as far as possible ignore prejudicial remarks during the course of trial where we are sitting as the trier of the facts and yet judges are human also, and subconsciously perhaps, this reference to the guilty plea was implanted in my mind, and keep in mind this was a murder case.

> "All criminal cases are serious but this probably is the most serious with which any defendant or any court can be faced. This was, I think, a prejudicial remark which might have been very difficult for me to overcome in the ultimate judgment of this case."

Judge Jones also indicated that she was concerned about the defendant's sudden change of mind regarding a jury trial, that she believed that the State had been "grossly unfair to the defendant" in not responding to the discovery motion, and that a continuance would have been impractical because, *inter alia,* she could not later "sit in fair and impartial judgment."

Subsequently, the defendant moved to dismiss the indictment on the ground of double jeopardy. The motion was heard before a different judge (Sodaro, J.), who held

that Judge Jones's decision to declare a mistrial was warranted. The defendant's motion to dismiss was therefore denied. The defendant Cornish took an appeal to the Court of Special Appeals from the denial of his motion to dismiss the indictment.[1] Because of the importance of the issue presented, we granted a writ of certiorari prior to a decision by the Court of Special Appeals.

In *Benton v. Maryland*, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court held that the Fifth Amendment's prohibition against twice placing a defendant in jeopardy is applicable to state criminal prosecutions by virtue of the Fourteenth Amendment to the United States Constitution. *See also Matter of Anderson*, 272 Md. 85, 321 A. 2d 516 (1974); *Pugh v. State*, 271 Md. 701, 319 A. 2d 542 (1974); *Couser v. State*, 256 Md. 393, 260 A. 2d 334 (1970). Consequently, the outcome of the instant case depends upon the decisions applying Fifth Amendment principles.[2]

What is regularly referred to as the "fountainhead decision" on the application of the Federal Constitution's double jeopardy clause to a retrial following the declaration of a mistrial is *United States v. Perez*, 9 Wheat. 579, 6 L. Ed. 165 (1824). There, the Court held that the Fifth Amendment did not preclude a retrial where the mistrial was declared because of the jury's inability to reach a verdict. In the opinion for the Court, Mr. Justice Story set forth the basic principles for determining the permissibility of a retrial following a mistrial:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever,

---

1. As we have decided in Neal v. State, 272 Md. 323, 322 A. 2d 887 (1974), the denial of a motion to dismiss an indictment on the ground of double jeopardy is immediately appealable, and the defendant need not await the outcome of his retrial before taking an appeal.

2. Prior to the decision in Benton v. Maryland, *supra*, the double jeopardy prohibition was applicable to Maryland prosecutions only as a common law principle. The view in this state was that, under the common law's double jeopardy prohibition, jeopardy did not attach until the rendition of a verdict and that, therefore, a retrial following the declaration of a mistrial did not give rise to a double jeopardy problem. Kyle v. State, 6 Md. App. 159, 250 A. 2d 314 (1969).

in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . ." [3] *Id.* at 580.

The above standard, that the declaration of a mistrial is within the trial judge's discretion but that the judge should, in exercising that discretion, declare a mistrial only where "there is manifest necessity for the act," has governed the Supreme Court cases on the subject ever since. *See State of Illinois v. Somerville*, 410 U. S. 458, 461, 93 S. Ct. 1066, 1069, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U. S. 470, 480-481, 91 S. Ct. 547, 555, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U. S. 734, 735-736, 83 S. Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Gori v. United States*, 367 U. S. 364, 367, 81 S. Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *Wade v. Hunter*, 336 U. S. 684, 689-690, 69 S. Ct. 834, 837-838, 93 L. Ed. 974 (1949); *Keerl v. Montana*, 213 U. S. 135, 137, 29 S. Ct. 469, 470, 53 L. Ed. 734 (1909); *Dreyer v. Illinois*, 187 U. S. 71, 85-86, 23 S. Ct. 28, 33, 47 L. Ed. 79 (1902); *Thompson v. United States*, 155 U. S. 271, 274, 15 S. Ct. 73, 74, 39 L. Ed. 146 (1894); *Logan v. United States*, 144 U. S. 263, 298, 12 S. Ct. 617, 628, 36 L. Ed. 429 (1892); *Simmons v. United States*, 142 U. S. 148, 154, 12 S. Ct. 171, 172, 35 L. Ed. 968 (1891).

While the Supreme Court has repeatedly insisted, from *Perez* to the present time, that the granting of a mistrial is a matter of the trial judge's discretion, and that the Court has not "formulate[d] rules based on categories of circumstances which will permit or preclude retrial," *United States v. Jorn*,

---

3. Ten years earlier, in United States v. Coolidge, 2 Gall. 364, 25 Fed. Cas. 622, 623, Fed. Case No. 14,858 (C.C. Mass. 1815), Mr. Justice Story stated that the declaration of a mistrial is within the trial judge's discretion but that the discretion to do so "is to be exercised only in very extraordinary and striking circumstances."

*supra,* 400 U. S. at 480, nevertheless the Court has at the same time laid down broad principles which do govern the exercise of the trial judge's discretion in various types of circumstances. As the Court said in *Illinois v. Somerville, supra,* 410 U. S. at 464, "[w]hile virtually all of the cases turn on the particular facts and thus escape meaningful categorization . . ., it is possible to distill from them a general approach . . . to situations such as that presented by this case." *See also* the dissenting opinion of Mr. Justice White in *Somerville,* 410 U. S. at 472: "Despite the generality of the *Perez* standard, some guidelines have evolved from past cases, as this Court has reviewed the exercise of trial court discretion in a variety of circumstances." The most significant guideline for the exercise of the trial judge's discretion is that a mistrial is to be declared only where it is "manifestly necessary," or "under urgent circumstances," or "only in very extraordinary and striking circumstances," and declaring a mistrial is not "to be lightly undertaken." *United States v. Perez, supra; United States v. Coolidge, supra; Downum v. United States, supra,* 372 U. S. at 736; *State of Illinois v. Somerville, supra,* 410 U. S. at 471.

More specific guidelines have arisen from the decided cases. Ordinarily a retrial is permitted where the mistrial was caused by the jury's inability to reach a verdict, *Dreyer v. Illinois, supra; Keerl v. Montana, supra; Logan v. United States, supra; United States v. Perez, supra; United States v. Medansky,* 486 F. 2d 807 (7th Cir. 1973); *United States v. Castellanos,* 478 F. 2d 749 (2d Cir. 1973); *United States v. Goldstein,* 479 F. 2d 1061 (2d Cir. 1973), *cert. denied* 414 U. S. 873 (1973); *United States v. Workman,* 28 Fed. Cas. 771, Fed. Case No. 16,764 (D. La. 1807); *Walters v. State,* 503 S.W.2d 895 (Ark. 1974); *Harwell v. State,* 230 Ga. 480, 197 S.E.2d 708 (1973); *State v. White,* 209 N.W.2d 15 (Iowa, 1973); *Bisceglia v. County Court,* 44 A.D.2d 619, 353 N.Y.S.2d 269 (1974); *Boone v. State,* 506 S.W.2d 227 (Tex. Cr. App. 1974); *but cf. United States ex rel. Russo v. Superior Court of N.J. Etc.,* 483 F. 2d 7 (3d Cir. 1973), *cert. denied* 414 U. S. 1023, 94 S. Ct. 447, 38 L.Ed.2d 315 (1973). A retrial is not normally barred by the prohibition against double jeopardy where the defendant sought or consented to the mistrial,

*United States v. Jorn, supra; United States v. Beasley,* 479 F. 2d 1124 (5th Cir. 1973), *cert. denied* 414 U. S. 924 (1973); *United States v. Goldstein, supra.* Where the tactical situation of an army in the field during wartime necessitated a mistrial, the Supreme Court upheld a second trial of the defendant, *Wade v. Hunter, supra.* A retrial is permitted where the trial judge's action in declaring a mistrial is necessary to protect the interest of the defendant, *United States v. Jorn, supra,* 400 U. S. at 483, explaining and limiting the holding in *Gori v. United States, supra; Whitfield v. Warden,* 486 F. 2d 1118, 1123 (4th Cir. 1973). Retrial is allowed where the mistrial was caused by the occurrence of an error which could not be cured during the remainder of the trial, and which would necessitate a reversal on appeal, *State of Illinois v. Somerville, supra.* Finally, the courts have regularly permitted a retrial where the mistrial was caused by the discovery of a juror's possible bias or where something has happened to render doubtful a juror's impartiality, *Simmons v. United States, supra; Thompson v. United States, supra; Whitfield v. Warden, supra; Smith v. State of Mississippi,* 478 F. 2d 88 (5th Cir. 1973); *Baker, Whitfield & Wilson v. State,* 15 Md. App. 73, 289 A. 2d 348 (1972); *Stewart v. Commonwealth,* 497 S.W.2d 226 (Ky. 1973); *State v. McDonald,* 215 N.W.2d 607 (Minn. 1974); *Williamson v. Sheriff, Clark County,* 515 P. 2d 1028 (Nev. 1973); *Commonwealth v. Stewart,* 317 A. 2d 616 (Pa. 1974).

However, retrial of the defendant following mistrial has been held to be prohibited by the double jeopardy clause where the mistrial was declared because of the absence of the prosecution's witnesses, *Downum v. United States, supra; United States v. Watson,* 3 Ben. 1, 28 Fed. Cas. 499, Fed. Case No. 16,651 (S.D. N.Y. 1868); *Commonwealth v. Ferguson,* 446 Pa. 24, 285 A. 2d 189 (1971); *but cf. United States ex rel. Gibson v. Ziegele,* 479 F. 2d 773 (3d Cir. 1973) *cert. denied* 414 U. S. 1008, 94 S. Ct. 370, 38 L.Ed.2d 246 (1973). In an opinion by Mr. Justice McLean, the Fifth Amendment was held to prohibit a retrial where the mistrial was declared after the prosecuting attorney at-

tempted to have a *nolle prosequi* entered because the prosecution's evidence was insufficient, *United States v. Shoemaker*, 2 McLean 114, 27 Fed. Cas. 1067, Fed. Case No. 16,279 (C.C. Ill. 1840). A retrial was prohibited where the district attorney was ill, and there was no showing that one of his assistants could not have taken over, *United States v. Watson, supra.* Re-prosecution is not permitted where a mistrial is declared "so as to afford the prosecution a more favorable opportunity to convict," *Downum v. United States, supra,* 372 U. S. at 736; *Gori v. United States, supra,* 367 U. S. at 369; *United States v. Kin Ping Cheung,* 485 F. 2d 689 (5th Cir. 1973); *McNeal v. Hollowell,* 481 F. 2d 1145 (5th Cir. 1973); *Jones v. State,* 17 Md. App. 504, 302 A. 2d 638 (1973). Where the effect of a mistrial is "[h]arassment of an accused by successive prosecutions," a retrial is barred, *Downum v. United States, supra,* 372 U. S. at 736; *Gori v. United States, supra,* 367 U. S. at 369. A second trial was not allowed where the trial judge declared a mistrial because continuation of the trial was not consistent with the court's convenience, *Commonwealth v. Wideman,* 453 Pa. 119, 306 A. 2d 894 (1973). And a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem, *United States v. Jorn, supra; United States v. Beasley, supra; United States v. Kin Ping Cheung, supra; United States v. Tinney,* 473 F. 2d 1085 (3d Cir. 1973), *cert. denied* 412 U. S. 928, 93 S. Ct. 2752, 37 L.Ed.2d 156 (1973).

Applying these principles to the case before us, we believe that Judge Jones's declaration of a mistrial was "manifestly necessary" and, consequently, there was no abuse of discretion.

The defendant argues that giving the prosecution another opportunity to present witnesses, or the trial judge's concern over the defendant's change from a jury trial to a non-jury trial, or the judge's view that the prosecution had acted unfairly in not responding to the discovery motion, are not grounds justifying a mistrial. We agree. Absence of the prosecution's witnesses is clearly not a proper ground for

declaring a mistrial, *Downum v. United States, supra.* A mistrial where the trial judge is acting to benefit the defendant, or in the defendant's "sole interest," is similarly an insufficient ground for a mistrial where the mistrial was unnecessarily declared. *United States v. Jorn, supra*, 400 U. S. at 483.[4]

However, another reason for the trial judge's declaring a mistrial here, and perhaps the chief reason, was the effect upon her of the statement that there was supposed to be a "guilty plea" in the case. Judge Jones further stated that "this reference to the guilty plea was implanted in my mind" and that it was "a prejudicial remark which might have been very difficult for me to overcome in the ultimate judgment of this case."

It is well settled that a mistrial is "manifestly necessary" where something has occurred to render a juror's impartiality doubtful. The Supreme Court long ago held in *Simmons v. United States, supra*, 142 U. S. at 154:

> "There can be no condition of things in which the necessity for the exercise of this [mistrial] power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that . . . the jurors, or any of them, are subject to such bias or prejudice as not to stand impartial between the government and the accused."

*See also Thompson v. United States, supra; Whitfield v. Warden, supra; Smith v. State of Mississippi, supra; Baker, Whitfield & Wilson v. State, supra; Stewart v.*

---

**4.** Mr. Justice Harlan, in his plurality opinion for the Court in *Jorn*, stated:

"Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action."

322

*Commonwealth, supra; State v. McDonald, supra; Williamson v. Sheriff, Clark County, supra; Commonwealth v. Stewart, supra.*

Of course, many different occurrences might lead to a concern that a juror's impartiality is impaired, but the same events might not be deemed to affect a judge's impartiality. This is because a judge's training and experience render him less susceptible to influence by improper remarks or occurrences at a trial. Thus, an event which would necessitate a mistrial where the trial is before a jury, might not require a mistrial in a non-jury trial. However, where the impartiality of a judge in a non-jury trial is *in fact* affected by remarks during the trial, and the judge acknowledges that his objectivity is compromised, the situation is the same as when a juror's impartiality is rendered doubtful. The judge, as trier of the facts in lieu of a jury, cannot properly assess the evidence if his impartiality is affected by an occurrence during the trial. In such a circumstance, there is the same "manifest necessity" to declare a mistrial as where a juror is biased.

As the trial judge did not abuse her discretion in declaring a mistrial, the Fifth Amendment's double jeopardy prohibition does not preclude the defendant's retrial. Consequently, the motion to dismiss the indictment was properly denied.

*Order affirmed.*
*Appellant to pay costs.*